IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIA DEANGELIS, | ) |
| | ) |
| Plaintiff, | ) 2:25-cv-68 |
| | ) |
| v. | ) |
| | ) |
| JOLT SOFTWARE, INC. and ADAM COONEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Plaintiff Mia DeAngelis was employed at Jolt Software, Inc. When she was hired, Jolt allowed her reasonable accommodations in the form of a flexible work schedule, due to her many doctor appointments for her diagnosed disabilities. ECF 1, ¶¶ 11, 16. However, this changed when Adam Cooney began his employment at Jolt in August 2023 as Vice President of Customer Success and Ms. DeAngelis's supervisor. *Id.*, ¶ 15. Mr. Cooney made comments suggesting that Ms. DeAngelis's performance needed to be strictly monitored and that she was spending too much time out of the office for medical appointments, and instructed her to have her flexible schedule accommodations formally approved with HR. *Id.*, ¶¶ 22-25. Mr. Cooney also placed Ms. DeAngelis on a Performance Improvement Plan and then changed the standard in a way that made it more difficult for her to meet her PIP goal. *Id.*, ¶¶ 28-32. Ms. DeAngelis asserts that, even though the new standard applied to all employees, she was the only employee who was placed on a PIP and no other similarly situated non-disabled employees were held to the same level of scrutiny under the new standard. *Id.*, ¶ 34.

Then, days after Ms. DeAngelis formally requested and received approval from HR for a flexible schedule accommodation, Mr. Cooney tried to fire Ms. DeAngelis,

but HR prevented him from doing so because he couldn't terminate her prior to the completion of her PIP, and there was no support for her termination. *Id.*, ¶¶ 38, 40-42. Finally, nine days later, Mr. Cooney ordered Ms. DeAngelis's termination. *Id.*, ¶ 45. Ms. DeAngelis was purportedly terminated for not meeting her PIP goal, which she claims was pretextual; the real reason for her termination was disability discrimination. *Id.*, ¶ 46.

Ms. DeAngelis filed this suit based on her termination, bringing claims under the Americans with Disabilities Act for disability discrimination, failure to accommodate, and retaliation. In her complaint, she also noted her intention to supplement the complaint to include claims under the Pennsylvania Human Relations Act, upon the conclusion of the ongoing administrative process. *Id.*, ¶ 9.

Defendants now move to dismiss Ms. DeAngelis's complaint. ECF 16. The motion is fully briefed and ready for disposition. After careful consideration, the Court will dismiss the ADA failure-to-accommodate claim without prejudice, but will otherwise deny the motion.

***Count I – ADA/PHRA Discrimination.*** Defendants argue that the complaint doesn't plausibly allege that Ms. DeAngelis's termination was a result of her disability. ECF 18, p. 5. The Court disagrees, and finds that Ms. DeAngelis plausibly alleges an ADA discrimination claim.

A prima facie case for ADA discrimination requires a plaintiff to demonstrate "(1) [she] is a disabled person within the meaning of the ADA; (2) [she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [she] has suffered an otherwise adverse employment decision as a result of discrimination." *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 171 (3d Cir. 2017) (cleaned up). Defendants take aim at prong 3, but

the complaint pleads sufficient facts to meet this prong.[1]

As to causation, Ms. DeAngelis has pled facts supporting an inference that Mr. Cooney fired her because of her disability. Shortly after he began working at Jolt, Mr. Cooney commented that Ms. DeAngelis was spending too much time out of the office for her medical appointments (ECF 1, ¶ 24), directed her to seek formal approval from HR for her flexible schedule accommodation (*id.*, ¶ 25), placed her on a PIP and redefined performance metrics in a way that disadvantaged her (*id.*, ¶¶ 28-35), and tried to terminate her five days after HR formally approved her accommodation request (but was stopped by HR) (*id.*, ¶¶ 38-39)—and just over a week later, Mr. Cooney terminated Ms. DeAngelis (*id.*, ¶ 45). These allegations are sufficient to establish at the pleading stage a causal link between Ms. DeAngelis's disability and her termination. *See Angelis v. Phila. Hous. Auth.*, No. 23-460, 2024 WL 643142, at *13 (E.D. Pa. Feb. 15, 2024) ("At the pleading stage, a [p]laintiff must only meet a minimal burden as to the issue of causation. Plaintiff has satisfied the third prong of a *prima facie* disability discrimination claim because Plaintiff was terminated five weeks after he requested an accommodation and two weeks after filing a formal complaint of disability discrimination." (cleaned up)); *Thomas v. Brandywine Hosp., LLC*, No. 21-03288, 2022 WL 507478, at *5 (E.D. Pa. Feb. 18, 2022) (allegations that employers suspended plaintiff pending the results of a psychiatric evaluation sufficient to infer discrimination, where it occurred days after she disclosed her disabilities and there was a "close relation between [plaintiff's] claimed disabilities

---

[1] The other two prongs are sufficiently pled. As to disability, Ms. DeAngelis alleges that her medical conditions required her to frequently take time off to attend medical appointments, which creates a plausible inference that her medical conditions substantially limited her ability to work. *See Hoffman v. Palace Ent.*, No. 12-06165, 2014 WL 1233669, at *8 (E.D. Pa. Mar. 25, 2014) (plaintiff sufficiently pled that her seizure disorder substantially limited her ability to work by requiring her to take unscheduled absences for medical treatment). Ms. DeAngelis also plausibly alleges that she was otherwise qualified to perform the essential function of the job, since she did so for two years without any performance issues. ECF 1, ¶ 13.

and [employers'] requirements for her reinstatement as well as [her supervisor's] comments" about her disabilities); *Trelenberg v. 21st Century Ins. & Fin. Servs., Inc.*, No. 12-3603, 2013 WL 3914468, at *11 (E.D. Pa. July 30, 2013) ("An analysis of causation mandates an inquiry into the motives of an employer and therefore is context-specific.").

*Count II – ADA/PHRA Failure-to-Accommodate.* Defendants argue that Ms. DeAngelis has not plausibly pled that they failed to make a good-faith effort to assist her in seeking accommodations, or that Mr. Cooney interfered with Ms. DeAngelis's ability to use her accommodation. ECF 18, pp. 7-8. Ms. DeAngelis contends that Mr. Cooney disrupted and undermined the accommodation process because he subjected her to heightened scrutiny and unjustified burdens, questioned her time off, directed her supervisor to monitor her closely, and required her to "re-request" the longstanding accommodation she had already been granted. ECF 22, pp. 9-10. Ms. DeAngelis argues that the complaint plausibly alleges that Mr. Cooney acted in bad faith during the interactive process by challenging a longstanding accommodation, placing her on a PIP (based on ambiguous metrics) three days before she submitted her accommodation request to HR, and attempting to terminate her five days after HR formally approved her accommodation. *Id.*, pp. 10-11. The Court finds that the failure-to-accommodate claim fails to plead an actual denial of accommodation.

"A plaintiff bringing an ADA failure-to-accommodate claim must establish: "(1) [she] was disabled and [her] employer knew it; (2) [she] requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [she] could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

Although Ms. DeAngelis claims that Mr. Cooney failed to participate in the interactive process in good faith, a predicate to a failure-to-accommodate claim is that

there must be some sort of ***denial of accommodation,*** such as if Mr. Cooney rescinded the pre-existing accommodation. *See id.*, 847 F.3d at 157 (dismissing failure-to-accommodate claim where employer continued to approve plaintiff's requested leave and plaintiff received the accommodation he asked for). "The interactive process is a means to an end, and a defendant is not liable under the ADA for failure to engage in the interactive process if the plaintiff obtained a reasonable accommodation." *Powell v. Boscov's Dep't Store, LLC*, No. 22-1045, 2024 WL 666485, at *18 (M.D. Pa. Feb. 16, 2024) (there is "no stand-alone claim for failure to engage in an interactive process under the ADA" (cleaned up)); *see also Whelan v. Teledyne Metalworking Prods.*, 226 F. App'x 141, 147 (3d Cir. 2007) ("[F]ailure to participate in the interactive process is not a ground for liability unless the employee has proven a failure to accommodate, namely, that a reasonable accommodation existed and the employer unreasonably failed to provide it.").

As pled in the complaint, Ms. DeAngelis received an accommodation throughout her employment at Jolt, both before and after Mr. Cooney asked her to re-submit her accommodation request to HR. ECF 1, ¶¶ 16, 17, 25, 38. Although Mr. Cooney allegedly placed additional burdens on Ms. DeAngelis (*e.g.*, directing her to re-request accommodation from HR), this doesn't amount to an allegation that Mr. Cooney actually withdrew or rescinded her pre-existing accommodation. *Compare with O'Malley v. Dowd Mktg., Inc.*, No. 17-1419, 2018 WL 6313616, at *9 (M.D. Pa. Nov. 15, 2018) (plaintiff has "alleged sufficient facts to state a claim for failure to accommodate based in part on [employer's] alleged refusal to engage with him in an interactive process regarding workplace accommodations after it had ***withdrawn an accommodation*** provided to" the plaintiff (emphasis added)); *Kosmac v. Nat'l R.R. Passenger Corp.*, No. 22-1480, 2024 WL 4252055, at *8 (W.D. Pa. Sept. 20, 2024) (Hardy, J.) (jury could find that supervisor effectively rescinded the accommodation plaintiff had been receiving, even though such denial of accommodation was short-

lived).

In reality, the allegations that Ms. DeAngelis relies on go more to bolstering her ADA discrimination claim rather than providing a basis for a separate accommodation claim. That said, if she can allege some accommodation that Defendants denied or withdrew, she may amend her complaint to do so. So the Court dismisses the failure-to-accommodate claim without prejudice and with leave to amend.[2]

*Count III – ADA/PHRA Retaliation.* Defendants argue that the retaliation claim fails because Ms. DeAngelis hasn't alleged that she engaged in a protected

---

[2] Defendants also argue that Ms. DeAngelis cannot proceed with the failure-to-accommodate claim because it wasn't included in the EEOC Charge. ECF 18, p. 12; ECF 23, pp. 12-15. The Court rejects this argument.

The test for "determining whether a later claim needs to be exhausted despite the filing of a previous charge is a two-pronged inquiry into whether the acts alleged in the subsequent suit are fairly within the scope of [1] the prior EEOC complaint, or [2] the investigation arising therefrom." *Simko v. U.S. Steel Corp*, 992 F.3d 198, 207 (3d Cir. 2021) (cleaned up). "[W]hen determining whether a claim fairly or reasonably falls within the investigation arising from a charge, courts consider (1) whether the claim arises from the same set of facts that support the original charge and (2) whether the claim advances the same theory of discrimination as the original charge." *Id.* at 209.

The allegations in the EEOC Charge would fairly encompass the failure-to-accommodate claim. The Charge alleges that Mr. Cooney required Ms. DeAngelis to formally request an accommodation from HR, that he placed her on a PIP in order to create a pretextual reason to terminate her employment, and that he terminated her in retaliation for formally requesting an accommodation. ECF 18-1, pp. 5-10. The failure-to-accommodate claim involves essentially the same set of facts that support the disability discrimination and retaliation claims, and a reasonable investigation arising out of the EEOC Charge would include an inquiry into the alleged adverse actions that were taken against Ms. DeAngelis relating to her disability—the demand to re-apply for accommodation, the PIP, and the termination—as well as the circumstances surrounding her request for accommodation. *See Simko*, 992 F.3d at 211 ("In comparing the two sets of allegations [in the EEOC charge and in the subsequent, unexhausted claim], we look for factual similarities or connections between the events described in the claims, the actors involved, and the nature of the employer conduct at issue.").

activity and because there is no causal connection between her accommodation request and her termination given that she was placed on a PIP before she submitted her formal accommodation request to HR. ECF 18, pp. 9-10; ECF 23, pp. 6-7. The Court disagrees.

A prima facie ADA retaliation claim requires: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Miller v. Erie Cnty. Off. of Child. & Youth*, No. 16-256, 2018 WL 3368723, at *7 (W.D. Pa. July 10, 2018) (Baxter, J.). "Requesting an accommodation in good faith is a protected activity." *Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632, 638 (3d Cir. 2018). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Davis v. Nat'l HME*, No. 23-40, 2023 WL 8096910, at *8 (W.D. Pa. Nov. 21, 2023) (Haines, J.) (cleaned up). "Ongoing antagonism may include evidence of unusually close supervision or aggressive discipline." *Krohmer v. Am. Airlines, Inc.*, No. 17-01239, 2021 WL 3828150, at *22 (W.D. Pa. Aug. 27, 2021) (Hornak, C.J.).

The retaliation claim is sufficiently pled. Mr. Cooney made comments indicating that he took issue with Ms. DeAngelis's flexible schedule accommodation. ECF 1, ¶¶ 24-25. Ms. DeAngelis engaged in protected activity by formally requesting the long-standing accommodation that had already been in place, at Mr. Cooney's behest. *Id.*, ¶¶ 27, 36. Mr. Cooney tried (unsuccessfully) to terminate Ms. DeAngelis five days after her accommodation was approved. *Id.*, ¶¶ 40-42. Then, Ms. DeAngelis was subject to adverse action when she was terminated, allegedly by Mr. Cooney's order, less than three weeks after she submitted her formal accommodation request

to HR. *Id.*, ¶ 45.

This timing, coupled with the other allegations suggesting that Mr. Cooney placed the additional burden on Ms. DeAngelis—to formally request the accommodation—because he took issue with her accommodation, are enough to infer causation at this stage. While Defendants argue that there were documented performance issues (requiring the PIP) that predated the accommodation request, these sorts of timing issues need more context and factual development—which is why they are better suited for resolution on a full record either at summary judgment or trial.[3] *See Shinn v. Pa. Sch. Bds. Ass'n*, No. 23-02097, 2025 WL 1839494, at *9 (M.D. Pa. July 3, 2025) ("[Plaintiff] will ultimately need to show proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. However, at the prima facie stage, a plaintiff need only proffer evidence sufficient to raise the inference that her engagement in a protected activity was the *likely reason* for the adverse employment action, not the but-for reason." (cleaned up)); *see also Krohmer*, 2021 WL 3828150, at *23 (although plaintiff's history of discipline prior to any protected activity "makes it harder for him to establish a *prima facie* case of retaliation[,] . . . . [i]n determining whether causation can be gleaned from the record as a whole, there are no limits on what the Court can consider" (cleaned up)).

**Exhaustion of PHRA administrative remedies**. Defendants ask that the Court dismiss the PHRA claims because they were brought before the expiration of

---

[3] Defendants also contend that Ms. DeAngelis cannot repackage her failure-to-accommodate claim into a retaliation claim because both counts are based on the same set of facts. ECF 18, p. 9 n.7; ECF 23, p. 8. However, Ms. DeAngelis's retaliation claim is separate from her failure-to-accommodate claim because the adverse employment action at issue is the termination, not the denial of an accommodation request. *Cf. Garner v. Sch. Dist. of Phila.*, 63 F. Supp. 3d 483, 500 (E.D. Pa. 2014) (dismissing retaliation claim in which the adverse employment action was the denial of a request for accommodation).

PHRC's one-year exclusive jurisdiction period and because Ms. DeAngelis failed to participate in the administrative process in good faith.[4]  ECF 18, p. 10-11.  Ms. DeAngelis represents that the PHRC issued a closure letter on March 3, 2025, less than two months after the complaint was filed.  ECF 21, p. 14.

Since Ms. DeAngelis's failure to exhaust has already been cured by the passage of time, the Court declines to dismiss the PHRA claims and will allow her to amend the complaint to reflect that exhaustion has now been completed.[5]  *See, e.g., Padula v. Clarks Summit State Hosp.*, No. 19-2184, 2021 WL 4429089, at *4 (M.D. Pa. Sept. 27, 2021).

\* \* \*

Accordingly, Defendants' motion to dismiss (ECF 16) is **GRANTED** in part and **DENIED** in part.  The failure-to-accommodate claim at Count II is dismissed without prejudice and with leave to amend.  Ms. DeAngelis is also granted leave to file an amended complaint to reflect exhaustion of her PHRA claims.  Any amended complaint must be filed by **July 24, 2025**.

Dated: July 10, 2025                           BY THE COURT:

                                               /s/ J. Nicholas Ranjan
                                               United States District Judge

---

[4] The Court notes that the complaint states that Ms. DeAngelis "intends to supplement her complaint to include PHRA claims upon completion of the PHRC's investigation on or before March 7, 2025," ECF 1, ¶ 9, but also purports to sue under the PHRA at each of the three counts.

[5] Although Defendants also request dismissal of Ms. DeAngelis's PHRA claims against Mr. Cooney based on her failure to exhaust her administrative remedies against him (ECF 18, p. 11), the Court observes that the Charge of Discrimination, which Ms. DeAngelis represents was dual-filed with the EEOC and PHRC, does indeed name Mr. Cooney.  ECF 18-1, p. 3.  So the PHRA claims against Mr. Cooney may proceed.  But Defendants are correct that there is no individual liability against Mr. Cooney for damages under Title I of the ADA.  *See O'Neil v. Diocese of Fire*, No. 6-65, 2006 WL 3052700, at *3 (W.D. Pa. Oct. 23, 2006) (Cohill, J.).